

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 29, 2021**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 13** |
| | § | |
| **BRIDGET BROWN PARSON,** | § | **Case No. 21-30982** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION TO DISMISS CHAPTER 13 CASE WITH PREJUDICE

Before this Court is the Trustee's Motion to Dismiss Chapter 13 Case with Prejudice for Five Years[1] (the "**Motion**" or "**Motion to Dismiss**") filed by the Chapter 13 Trustee, Thomas D. Powers (the "**Trustee**") with regard to the Chapter 13 bankruptcy filed by *pro se* Debtor, Bridget Brown Parson (the "**Debtor**" or "**Ms. Parson**"). In the Motion to Dismiss, the Trustee argues that the Court should dismiss the Debtor's bankruptcy case with prejudice for five years for her "abuse"

---

[1] Dkt. No. 47.

1

of the bankruptcy process.[2] Select Portfolio Servicing, Inc. ("**SPS**"), the servicer for Ms. Parson's mortgage on her primary residence, subsequently filed a Response in Support of the Trustee's Motion to Dismiss, asserting that cause exists to dismiss the Debtor with prejudice.[3]

For the reasons stated below, the Court will grant the Trustee's Motion to Dismiss, but will deny the Trustee's request for dismissal with prejudice for five years. Rather, the Court will impose on the Debtor a bar to refiling of **three years** from the date of this Order.

## I.     Jurisdiction and Venue.

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). The bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33. The following shall constitute this Court's reasoning pursuant to Rule 59 of the Federal Rules of Civil Procedure (the "**Rules**"), as incorporated by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.     Background and Procedural Posture.

The Debtor came to this Court with an extensive, complex history in bankruptcy courts, both here in the Dallas Division of the Northern District of Texas and elsewhere.[4] Ms. Parson has filed two previous Chapter 13 bankruptcy cases, both of which were disclosed in her Chapter 13 petition in the instant case.[5] The Debtor filed her first case, Case No. 15-30080-BJH, in the Northern District of Texas on January 5, 2015, and it was dismissed on June 5, 2018. She filed her

---

[2] *Id.* at 5 ("Trustee alleges the Debtor has abused the Bankruptcy process for six years, she has needlessly wasted the court's and third parties' time, she has imposed unnecessary costs on creditors and will continue that practice of abuse unless the Court dismisses her bankruptcy with prejudice to refiling a bankruptcy for FIVE years.") (emphasis in original).

[3] *See* Dkt. No. 66.

[4] The Court takes judicial notice of the Debtor's dockets in both of her two prior bankruptcies, Case No. 15-30080-BJH (Bankr. N.D. Tex) and Case No. 18-41511-BTR (Bankr. E.D. Tex.).

[5] Dkt. No. 1.

second case, Case No. 18-41511-BTR, in the Eastern District of Texas on July 11, 2018, and it was dismissed on May 28, 2019.

In both previous cases, Ms. Parson displayed a penchant for vexatious, frivolous litigation designed to bog down the respective courts with innumerable pleadings and appeals in an apparent effort to hinder the payment of her creditors. These tactics have now returned before this Court in her third case. As it bears on dismissal, the Court will summarize the complex factual and procedural history surrounding Ms. Parson's time in bankruptcy court as it underpins the necessity for the relief requested in the Trustee's Motion and the basis for this Court's ultimate ruling.[6]

A. Pre-Bankruptcy

Ms. Parson owns two homes, both of which she is trying to maintain in her Chapter 13 case. Her first home is located at 508 Grady Lane, Cedar Hill TX, 75104 (the "**Grady Lane Residence**"). Her second home/property is located at 612 Penguin Drive, Dallas, TX, 75241 (the "**Penguin Drive Residence**") and was inherited by Ms. Parson. Ms. Parson lives at the Grady Lane Residence and her adult son lives at the Penguin Drive Residence. At the time of this Motion to Dismiss, it seems that Ms. Parson is substantially current on her payments on the Penguin Drive Residence,[7] but considerably in arrears on her actual place of residence, the Grady Lane Residence.[8]

Ms. Parson's history with her creditors prior to bankruptcy is also particularly instructive with regard to her motives behind her bankruptcy filing and this Court's analysis on dismissal.

---

[6] *See In re Jordan*, 598 B.R. 396, 406–07 (Bankr. E.D. La. 2019) ("While a debtor's serial filings do not necessarily constitute bad faith, a debtor's prepetition conduct, including his conduct in prior cases, is a valid consideration in determining a debtor's good faith in filing a subsequent case and confirmation of a proposed plan.").

[7] The Debtor's default, if any, is minimal. *See* Dkt. No. 39 (agreed order with PHH Mortgage Corporation w/r/t the Penguin Drive Residence).

[8] Proof of Claim No. 9-1 filed by SPS addresses the mortgage and arrearage on the Grady Lane residence. It is a secured claim for $233,723.48. Ms. Parson has filed an objection with regards to the Proof of Claim. Dkt. No. 49. However, Ms. Parson has never set the objection for hearing. SPS filed a response to the objection on August 27, 2021. Dkt. No. 67.

3

Most notably, in 2015, Becky Cole was granted a default judgment (the "**Judgment**") against the Debtor.[9] Mr. James Carroll, III, filed a Proof of Claim No. 8-1 in this case on behalf of Becky Cole for $24,956.60.[10] It appears that Ms. Parson filed this bankruptcy immediately after the Court of Appeals, 5th District of Texas, denied her motion to stay the execution of the Judgment on May 20, 2021.[11]

B. Case No. 15-30080-BJH in the Northern District of Texas

Ms. Parson filed her first voluntary Chapter 13 petition in the Northern District of Texas, Dallas Division, on January 5, 2015. The Honorable Barbara J. Houser presided over the case until her special designation as lead mediator in *In re Financial Oversight and Management Board for Puerto Rico*.[12] Thereafter, the Honorable Harlin D. Hale presided over the case in Judge Houser's absence and oversaw much of the case. Ms. Parson was originally represented by experienced Chapter 13 counsel. However, at some point in the proceedings, Ms. Parson began filing her own pleadings,[13] eventually terminating her counsel's representation and continuing in Chapter 13 *pro se*.

Ms. Parson proceeded to file numerous pleadings, object continuously to the bankruptcy process, and appeal virtually every order from the court, including ones in her favor. A review of the docket in the Debtor's first case shows no less than five (5) motions for continuance, six (6) requests to stay further proceedings, and thirteen (13) notices of appeal. Overall, there was an astounding three-hundred and eighty-nine (389) docket entries in her Chapter 13 case at the time of dismissal. Further, as repeatedly brought to this Court's attention by the Debtor in her Motion

---

[9] *See* Dkt. No. 47.
[10] Mr. Carroll is the attorney of record pursuant to the Becky Cole Proof of Claim.
[11] Dkt. No. 47.
[12] Order Appointing Mediation Team, Case No. 17-03283-LTS, Dkt. No. 430 (Bankr. D.P.R.).
[13] Memorandum Opinion and Order at 3, Case No. 15-30080-BJH, Dkt. No. 212 (Bankr. N.D. Tex. 2018) (explaining circumstances pursuant to which Ms. Parson terminated counsel).

to Transfer Venue[14] and Motion for Recusal[15] in the instant case,[16] was the Debtor's Motion to Recuse Judge Harlin D. Hale (the "**Hale Recusal Motion**").[17]

The Hale Recusal Motion arose out of a motion to lift stay that was resolved by an agreed order signed by Ms. Parson personally. After allegedly defaulting on payments under the agreed order, Ms. Parson failed to provide proof of payment. Instead, she filed at least twenty-five (25) separate pleadings with the court, including the Hale Recusal Motion. She alleged a litany of wholly unsubstantiated complaints as reasons for recusal, including that: (1) Judge Hale was a witness and therefore could not provide her a fair trial; (2) Judge Hale was racially prejudiced against her; (3) there had been illegal *ex parte* communications between the court and opposing counsel; and (4) adverse rulings evidenced a prejudice against the Debtor.[18] In a detailed opinion, Judge Hale found that there was nothing in the record indicating that a reasonable person with knowledge and understanding of all the relevant facts could question the court's impartiality; therefore, Judge Hale denied recusal.[19]

Ms. Parson's propensity for appellate practice was also on full display in her first bankruptcy case. As previously stated, the Debtor filed at least thirteen (13) notices of appeal in her first bankruptcy case alone. For each appeal, Ms. Parson requested a waiver of the filing fees.[20]

---

[14] Dkt. No. 63.

[15] Dkt. No. 59.

[16] Both the Motion for Recusal and Motion to Transfer Venue were denied by this Court by oral ruling and subsequently by written opinion. *See* Dkt. Nos. 89 and 91.

[17] Motion to Recuse Judge Hale, Case No. 15-30080-BJH, Dkt. No. 161 (Bankr. N.D. Tex. 2018).

[18] Memorandum Opinion and Order Denying Debtor's Motion to Recuse at 2, Case No. 15-30080-BJH, Dkt. No. 217 (Bankr. N.D. Tex. 2018).

[19] *Id.* at 9-10.

[20] *See, e.g.,* Affidavit of Debtor for Inability to Pay Cost, Case No. 15-30080-BJH, Dkt. No. 227 (Bankr. N.D. Tex. 2018).

Each application to procced *in forma pauperis* was denied by the bankruptcy court or the District Court.[21] Thereafter, Ms. Parson's appeals were all dismissed or denied.[22]

On June 5, 2018, Ms. Parson's first bankruptcy case was dismissed, for failure to make plan payments.[23]

C. Case No. 18-41511-BTR in the Eastern District of Texas

One month after dismissal of her first bankruptcy case, Ms. Parson filed her second voluntary Chapter 13 petition in the Eastern District of Texas, Sherman Division, on July 11, 2018.[24] The Honorable Brenda T. Rhoades presided over the case. Again, Ms. Parson was originally represented by experienced Chapter 13 counsel. However, only three months after filing the petition, Debtor's counsel sought to withdraw from the case.[25] The Debtor's counsel cited a breakdown in communication between himself and the Debtor and substantial disagreement regarding the prosecution of the bankruptcy case. In point of fact, Ms. Parson had once again proceeded to file her own *pro se* responses to objections without communicating with her attorney. The court granted counsel's request to withdraw,[26] and Ms. Parson proceeded again in Chapter 13 *pro se*.

Ms. Parson continued many of the practices from her previous Northern District case in the Eastern District case as well, filing countless pleadings, hindering the bankruptcy process with frivolous objections, and again appealing virtually every order Judges Rhoades issued. A review

---

[21] *See, e.g.,* Final Order Denying Affidavit of Debtor for Inability to Pay Cost in the Notice of Appeal, Case No. 15-30080-BJH, Dkt. No. 230 (Bankr. N.D. Tex. 2018).

[22] The Court would like to note that it is in no way admonishing a *pro se* debtor for filing a waiver for inability to pay fees. However, Ms. Parson was not indigent, as evidenced by the denial of the applications. Rather, this appears to be a tactic Ms. Parson used (and is still attempting to use in this case) to prolong her bankruptcy and avoid paying creditors.

[23] Order Dismissing Debtor Without Prejudice, Case No. 15-30080-BJH, Dkt. No. 321 (Bankr. N.D. Tex. 2018).

[24] Chapter 13 Voluntary Petition With Schedules A-J, Case No. 18-41511-BTR, Dkt. No. 1 (Bankr. E.D. Tex. 2018).

[25] Motion to Withdraw as Attorney, Case No. 18-41511-BTR, Dkt. No. 21 (Bankr. E.D. Tex. 2018).

[26] Order Granting Mark S. Toronjo's Motion to Withdraw as Counsel of Record for the Debtor, Case No. 18-41511-BTR, Dkt. No. 39 (Bankr. E.D. Tex. 2018).

of the docket in the Debtor's second Chapter 13 bankruptcy case shows no less than three-hundred and eleven (311) separate docket entries, including approximately thirteen (13) notices of appeal, two (2) requests for reconsideration, six (6) motions for inability to pay fees, four (4) motions for continuance, six (6) motions to strike, six (6) requests to stay further proceedings and even one (1) writ of mandamus.

As with the previous case, the Debtor again moved to recuse the presiding bankruptcy judge. However, the Debtor "upped her game" in the Eastern District, filing at least four (4) separate motions for recusal during different stages of the case.[27] Each of the recusal motions differed slightly in the allegations, but they can be fairly summarized as baselessly accusing the court of : (1) conducting illegal hearings; (2) not conducting hearings when "required" to do so; (3) *ex parte* communications with counsel for creditors; (4) conducting hearings despite pending appeals; and (5) conducting hearings without a visible court reporter.[28] Ms. Parson additionally accused Judge Rhoades of having racial biases[29] and abusing her power.[30] Judge Rhoades denied Ms. Parson's *many* motions for recusal in thoughtfully-detailed memorandum opinions, finding the allegations wholly inaccurate and often based off misunderstandings of the legal process.[31]

---

[27] This does not include the numerous supplemental motions to each motion for recusal.

[28] *See, e.g.,* Memorandum Opinion and Order Denying Debtor's Motion to Recuse, Case No. 18-41511-BTR, Dkt. No. 223 (Bankr. E.D. Tex. 2019) (summarizing allegations made by Debtor); Memorandum Opinion and Order Denying Debtor's Motion to Recuse, Case No. 18-41511-BTR, Dkt. No. 185 (Bankr. E.D. Tex. 2019) (summarizing allegations made by Debtor).

[29] *See* Memorandum Opinion and Order Denying Debtor's Motion to Recuse at 4, Case No. 18-41511-BTR, Dkt. No. 223 (Bankr. E.D. Tex. 2019) ("The Debtor's complaint that this Court is biased because counsel for one of the mortgage holders 'is an American Asian, like the Judge' is premised on the Debtor's unhappiness with the Court's rulings on the merits.").

[30] *See* Memorandum Opinion and Order Denying Debtor's Motion to Recuse, Case No. 18-41511-BTR, Dkt. No. 87 (Bankr. E.D. Tex. 2019) ("The Debtor has failed to show that I abused my power by assessing her credibility[.]").

[31] *See e.g.,* Memorandum Opinion and Order Denying Debtor's Motion to Recuse, Case No. 18-41511-BTR, Dkt. No. 185 (Bankr. E.D. Tex. 2019) ("In summary, there is nothing in the record indicating that a reasonable person with knowledge and understanding of all the relevant facts would conclude that this Court's impartiality could reasonably be questioned.").

Instead of proceeding forward in her bankruptcy case with an earnest attempt at paying her creditors, Ms. Parson instead chose to bog down the court with a slew of appeals. As previously stated, the Debtor filed at least thirteen (13) notices of appeal in the Eastern District case alone. True to form, she also filed, again, a handful of requests to waive the filing fees for her appeals, all of which Judge Rhoades denied for failure to comport with filing requirements, bad faith, or misrepresentations regarding indigent status.[32] The district court dismissed each of Ms. Parson's appeals with prejudice.[33]

Ms. Parson's Chapter 13 case was ultimately dismissed by Judge Rhoades on May 28, 2019.[34] Judge Rhoades found that Ms. Parson had requested a refund of plan payments with full knowledge that this would lead to the underfunding of her plan. After granting the Debtor's request and the trustee's tendering of the refund to Ms. Parson, Ms. Parson did in fact become delinquent under the plan.[35] Thus, Ms. Parson's second Chapter 13 case was dismissed without prejudice a little over 10 months after it had originally been filed.[36]

D. Case No. 21-30982 in the Northern District of Texas

After the dismissal of her two previous Chapter 13 bankruptcy cases, and only one week after the Fifth Court of Appeals in Dallas denied her motion to stay execution of the Becky Cole Judgment,[37] Ms. Parson filed her third Chapter 13 bankruptcy in this Court on May 27, 2021.[38]

---

[32] *See, e.g.,* Memorandum Opinion and Order Denying Application to Proceed *In Forma Pauperis*, Case No. 18-41511-BTR, Dkt. No. 175 (Bankr. E.D. Tex. 2019) (noting Debtor's claims of indigency were contrary to the information in her sworn schedules).
[33] *See, e.g.,* Order By District Court Judge Robert W. Schroeder III, Civil Action Number: 4:19-cv-00453-RWS, Affirming Bankruptcy Court's Memorandum Opinion and Order and Denying as Moot All Other Requests for Relief, Case No. 18-41511-BTR, Dkt. No. 311 (Bankr. E.D. Tex. 2020).
[34] Memorandum Opinion and Order Dismissing Case, Case No. 18-41511-BTR, Dkt. No. 263 (Bankr. E.D. Tex. 2019).
[35] *See* 11 U.S.C. §§ 1307(c)(1), (4) and (6).
[36] Ms. Parson managed to almost match the number of docket entries in her first Chapter 13 case in about one-third of the time.
[37] Dkt. No. 47.
[38] Dkt. No. 8.

Ms. Parson chose to proceed in this case *pro se* from the start, unlike her two previous bankruptcy cases.[39] However, in her time so far in this Court, Ms. Parson's actions have unfortunately mirrored the most recalcitrant of her conduct from her previously dismissed cases.

The Debtor filed a proposed Chapter 13 plan (the "**Plan**") on June 10, 2021.[40] The Plan had many notable deficiencies. For example, the Plan failed to properly treat certain secured debts, including the prepetition arrearage of SPS and the secured claim of Becky Cole. Additionally, the Debtor had considerable equity in her non-exempt second home (the Penguin Drive Residence) occupied by her adult children but did not propose any amount of such equity to be paid to creditors. These are striking deficiencies considering that Ms. Parson has proposed confirmable plans in her two prior bankruptcy cases, each of which properly dealt with such issues.[41]

The Court held an approximately two-hour hearing on August 5, 2021, regarding confirmation of the Debtor's proposed Plan in which the Trustee and the Debtor appeared, as did counsel for Becky Cole and SPS. The Trustee, Becky Cole and SPS each objected to confirmation of the Plan. The Court heard the testimony of the Debtor, took evidence, and heard arguments regarding the Plan. Based on the testimony, evidence, and arguments, the Court found that the Debtor failed to carry her burden of proof as to confirmation because the Plan was not confirmable on its face. The Court found that the Debtor failed to comply with various provisions of 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), including sections 1322; 1325(a)(3) (good faith); 1325(a)(4) (best interests of creditors); 1325(a)(7) (good faith); and 1325(a)(9) (failure to supply tax returns), any of which alone was sufficient to find the Plan unconfirmable. The Plan also failed

---

[39] The Court certainly respects the right of debtors to proceed *pro se*. However, as evidenced by her previous cases, this seems to be a tactic by Ms. Parson to allow her to proceed, not hampered by the refinement of counsel, to slow down her bankruptcy cases through excessive filing practices.

[40] Dkt. No. 15.

[41] *See, e.g.,* Order Confirming Chapter 13 Plan, Case No. Case No. 15-30080-BJH, Dkt. No. 33 (Bankr. N.D. Tex. 2015); Amended Order Confirming Chapter 13 Plan, Case No. 18-41511-BTR, Dkt. No. 42 (Bankr. E.D. Tex. 2018).

to schedule numerous creditors from her prior two bankruptcies and failed to comply with the Court's Standing Chapter 13 Order as it pertains to monthly conduit payments on mortgages.[42] Accordingly, the Court entered its Order Denying Confirmation of Chapter 13 Plan (the "**Confirmation Order**") on August 11, 2021,[43] and strongly recommended that Ms. Parson retain counsel to assist her in her Chapter 13 bankruptcy.

The Debtor did not seek to amend her Plan or retain counsel. Rather, the Debtor filed a Notice of Appeal of the Confirmation Order on August 25, 2021.[44] The Notice of Appeal was relatively difficult to decipher and amounted to a complaint against this Court for its adverse ruling in the Confirmation Order. Buried within the Notice of Appeal can be found at least three separate motions: a Motion for New Trial/Motion to Reconsider,[45] a Motion to Transfer Venue,[46] and a Motion for Recusal,[47] each of which were properly docketed separately by the Clerk of Court.

The Debtor's Motion to Reconsider was denied by order dated September 1, 2021 (without further hearing).[48] On September 2, 2021, this Court held a three-hour hearing on the Motion for Recusal, the Motion to Transfer Venue and the Trustee's Motion to Dismiss. One-hundred and nineteen (119) total exhibits were filed on behalf of the Trustee and SPS. The Debtor offered no exhibits at the hearing. The ninety-eight (98) exhibits offered by the Trustee and admitted by the Court into evidence were largely a recollection of the Debtor's prior filings in her various cases. The Trustee's exhibits can be categorized into the following groups: (1) documents pertaining to SPS and the mortgage; (2) historical motions to continue filed by the Debtor; (3) historical notices

---

[42] *See* General Order 2021-05, at 2, 16–20.
[43] Dkt. No. 52.
[44] Dkt. No. 58.
[45] Dkt. No. 61.
[46] Dkt. No. 63.
[47] Dkt. No. 59.
[48] The Debtor brought the Court no new evidence to reconsider. Rather, the Debtor rehashed old arguments and frivolous objections, none of which would result in a successful confirmation. Dkt. No. 72. The Debtor's Motion to Reconsider made additional requests for a jury trial and contempt order, which were also denied. *See id.*

of appeal filed by the Debtor; (4) the bankruptcy clerk's transmittal of records in the various appeals; (5) motions to strike; (6) applications to proceed *in forma pauperis*; (7) requests for complete clerk's records in prior appeals; and (8) other generic motions filed by the Debtor in prior cases, such as motions for recusal.[49] Of the twenty-one (21) exhibits offered by SPS, the Court admitted eight (8) into evidence,[50] all of which generally dealt with Ms. Parson's treatment of her mortgage, the amount of the outstanding arrearage, and the district court's prior order authorizing foreclosure on the Grady Lane Residence.[51]

In both the Motion for Recusal[52] and during the hearing thereon,[53] the Debtor failed to present any substantive evidence, instead choosing to make broad, baseless allegations against the Court, including but not limited to: the Court's "ignorance" of state court orders and prior bankruptcies, failure to "swear in" opposing counsel, prejudice constricting the Debtor's ability to "freely speak," the use of "adverse documents" of which the Debtor was unaware and not properly noticed, violations of her "natural rights," and an environment of "hostility."[54] The Court found nothing in the record indicating that a ***reasonable*** person with knowledge and understanding of all the relevant facts would conclude that her impartiality could be reasonably questioned;[55] thus, by oral bench ruling, the Court denied the Motion for Recusal on the record. The Court issued its Memorandum Opinion and Order Denying Motion for Recusal on September 15, 2021.[56]

---

[49] *See* Dkt. Nos. 56–57, 69 (Trustee's Witness and Exhibit List and Supplemental Witness and Exhibit Lists).

[50] *See* Dkt. No. 82 (the Court admitted exhibits 2,5,7,8,10,11,12 and 13 from SPS).

[51] *See* Dkt. No. 62 (Witness and Exhibit List filed by SPS).

[52] The allegations made by Ms. Parson in the Motion for Recusal were exceedingly difficult for the Court to ascertain. However, given that Ms. Parson was proceeding *pro se*, the Court did its best to ascertain the specific allegations in the Motion for Recusal to address each substantiative allegation in its analysis.

[53] The Court gave Ms. Parson significant leeway and time to make her case for recusal before the Court. The Court took extra time to do so due to the seriousness of the allegations made and the Debtor's status as a *pro se* litigant.

[54] *See* Dkt. No. 58.

[55] Dkt. No. 89; *see Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009). *See also Liteky v. U.S.*, 510 U.S. 540, 558 (1994) (Kennedy, J., concurring in judgment) ("[U]nder [28 U.S.C.] § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.").

[56] Dkt. No. 89.

Both in the Motion to Transfer Venue and the corresponding hearing, the Debtor was not clear as to which court she sought to transfer her bankruptcy case. She was also unclear as to why transfer was necessary, largely rehashing her argument for recusal rather than asserting facts or presenting evidence why another venue was preferrable to this venue, the one in which she chose to *voluntarily* file her bankruptcy case.[57] Rather, the Debtor argued mainly that this Court should not preside over this case, in large part because this Court issued its Confirmation Order adverse to her and because she had a long history before Judge Hale, the judge within this district who she had previously sought to recuse and who was now, years later, the Chief Judge of the Northern District of Texas. After hearing Ms. Parson's argument for transfer of venue, the Court, by oral bench ruling, denied the Motion to Transfer Venue on the record. The Court found the Debtor did not meet the burden of proof[58] for a finding that a transfer of a bankruptcy proceeding to another court was warranted under § 1412 of Title 28 of the United States Code. The Court issued its Memorandum Opinion and Order Denying the Motion to Transfer Venue on September 15, 2021.[59]

The Trustee filed his Motion to Dismiss with Prejudice for Five Years on August 4, 2021.[60] The Motion to Dismiss characterized the Debtor as one who "has a long history of using the judicial system to delay and hinder creditors."[61] The Trustee summarized the Debtor's "tactics" in avoiding payment to creditors as follows:

---

[57] Ms. Parson filed her voluntary Chapter 13 petition on May 27, 2021 in the Northern District of Texas. Dkt. No. 1. The Court noted that Ms. Parson physically filed her case with the Clerk of Court in Fort Worth, Texas. However, because of her county of residence, her case was properly assigned to the Dallas Division, as is required in the Northern District of Texas.

[58] The party seeking to transfer venue bears the burden of showing by a preponderance of the evidence that transfer would be appropriate. *See In re Commonwealth Oil Refining Company, Inc.*, 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980).

[59] Dkt. No. 91.

[60] Dkt. No. 47.

[61] *Id.* at 2.

Debtor's practice has been consistent. She fails to appear and defend lawsuits and motions. She files motions to recuse the judge. She appeals state court rulings, fails to pay the costs of the appeal and files bankruptcy to stay the state court process. While in bankruptcy she continues her tactics by filing multiple pleadings requesting extraordinary relief, makes unwarranted accusations, fails to provide evidence of her allegations and accusations, fails to appear at hearings, files motions to recuse the judge, alleges improper conduct by parties who disagree or dispute her allegations, appeals almost [all] rulings not in her favor, fails to pay the costs of appeal and fails to prosecute her appeals.[62]

SPS filed a Response in Support of the Trustee's Motion to Dismiss (the "**SPS Response**").[63] In the SPS Response, SPS agreed with the Trustee's Motion to Dismiss and cited three causes for dismissal: (1) the denial of the Plan; (2) the failure of Ms. Parson to cure mortgage arrears; and (3) the failure of Ms. Parson to pay post-petition ongoing mortgage payments.[64] SPS additionally agreed with the Trustee that there was cause to dismiss the case with prejudice, but asserted that, as to SPS, the time of dismissal should only be so long as the Debtor remains in possession of the Grady Lane Residence.[65] SPS did state, however, that the facts pled by the Trustee and evidence before the Court could support a five-year bar or even longer.[66] Ms. Parson subsequently filed an Objection to the Trustee's Motion to Dismiss in which she argued that the Trustee's Motion, specifically the bar to re-filing, was "unheard of."[67] However, Ms. Parson presented no evidence to that point and largely restated her previous allegations regarding recusal.[68]

---

[62] *Id.*

[63] Dkt. No. 66.

[64] *See id.*

[65] *Id.* at 3.

[66] *Id.* ("Although there is substantial case law precedent for a dismissal with prejudice to re-filing for five years, or even longer, SPS is constrained to request prejudice tailored to the facts affecting SPS' claim. Therefore, although the facts as pled by the chapter 13 trustee, and the evidence offered by the trustee may support a 5-year prejudicial period or even longer, SPS is constrained to request dismissal with prejudice for only as long as Debtor remains in possession of the Property, capped by the 5-year period requested by the Trustee.").

[67] Dkt. No. 76 at 1.

[68] Ms. Parson again falsely claimed that the Court had no jurisdiction because of pending litigation elsewhere. *Id.* at 1–2. These allegations were all answered and denied by the Court the same day by oral ruling, as well as in the subsequent Order Denying Debtor's Motion for Recusal entered September 15, 2021. Dkt. No. 89.

At the hearing on the Motion to Dismiss, the Trustee reiterated his request for not only dismissal of the Debtor, but also for a five-year dismissal with prejudice. The Trustee summarized the Debtor's history in the courts and her failure to put forth a confirmable Plan in this case as evidence of the need for dismissal. The Trustee also asserted that a dismissal with prejudice for five years was necessary to allow for foreclosure, since Ms. Parson would inevitably attempt to appeal anything and everything she could to slow down the foreclosure process.

Ms. Parson argued at the hearing on her own behalf, but largely rehashed frivolous arguments on why the case should be transferred to another venue or why the Court should recuse itself from her bankruptcy case, two motions which had already been denied by earlier oral ruling that same day. As she had done at a prior hearing in this Court[69] and in other courts,[70] Ms. Parson objected to the hearing itself and refused to cooperate with the Trustee and Mr. H. Gray Burks, IV, counsel for SPS. Ms. Parson refused to look at (or even touch) the exhibit binders prepared by the Trustee and SPS, claiming she had never seen them and did not know what was inside.[71] She also objected to Mr. Burks appearing via WebEx, claiming she did not know the man and he could not appear.[72] Overall, Ms. Parson brought no evidence to the hearing bearing on her honest intent to reorganize or why her case should not be dismissed. She has also subsequently failed to file an amended Plan to correct any of the issues articulated in the Confirmation Order. At the conclusion of the hearing, the Court took the Motion to Dismiss under advisement.

---

[69] Ms. Parson lodged similar objections to exhibit binders at the August 5, 2021 confirmation hearing.

[70] *See, e.g,* Dkt. No. 72 (denying reconsideration of the Confirmation Order and Ms. Parson's argument regarding jurisdiction).

[71] Ms. Parson exhibited similar conduct in her prior bankruptcy case before Judge Rhoades. *See* Memorandum Opinion and Order Denying Debtor's Motion to Recuse, Case No. 18-41511-BTR, Dkt. No. 223 (Bankr. E.D. Tex. 2019) ("She has objected to attempts to hand her copies of exhibits as well as witness and exhibit lists. She has objected to the handing of exhibit binders to the Court.").

[72] Again, this is another complaint Ms. Parson previously lodged in her case before Judge Rhoades. *See id.* ("She has objected to telephonic appearances, claiming not to understand the source of the voice 'hollering' over the courtroom speaker.").

Since the hearing on the Motion to Dismiss, Ms. Parson's appellate practices from her past cases have resurfaced. As previously mentioned, she had already filed a Notice of Appeal[73] of the Confirmation Order (itself an interlocutory order), containing the Motion for Recusal, Motion to Reconsider, and Motion to Transfer Venue. Thereafter, Ms. Parson requested to proceed on her appeal *in forma pauperis*,[74] despite having the funds to pay the appellate fees per her Schedules of Assets and Liabilities of record.[75] The Court denied her request on September 16, 2021, finding it to have been made in bad faith.[76] The Debtor has since appealed her denial to proceed *in forma pauperis*, and even requested again to proceed *in forma pauperis* on that appeal as well. Additionally, Ms. Parson has now also appealed the Court's denial of reconsideration of the Confirmation Order and the Order Denying the Motion to Transfer Venue.[77]

In sum, Ms. Parson's actions in her previous bankruptcies have regrettably continued before this Court. The Trustee asserts that these actions are nothing more than an attempt put off payment to creditors and maintain two homes, as opposed to proceeding toward a successful Plan and discharge. Thus, the Trustee has requested: (1) the Debtor's case be dismissed; and (2) the dismissal be with prejudice for five years. The Court will take up both issues in turn.

## III.    Standard Pursuant to 11 U.S.C. § 1307

Section 105 of the Bankruptcy Code authorizes the Court to take *any* action necessary to carry out the provisions of the Code.[78] Additionally, Section 1307 of the Bankruptcy Code authorizes a bankruptcy court to dismiss a Chapter 13 case for cause.[79] Section 1307(c) provides

---

[73] Dkt. No. 58.
[74] Dkt. No. 60.
[75] Debtor's Schedules of Assets and Liabilities, made under penalty of perjury, indicated that the Debtor has monthly income of $4,755.99 and disposable income of $436.00 per month. Thus, she was not indigent and was not entitled to have her appellate fees waived. Dkt. No. 92.
[76] *See id.*
[77] Dkt. No. 93.
[78] 11 U.S.C. § 105.
[79] *Id.* § 1307.

nonexclusive grounds which may constitute cause for dismissal of a Chapter 13 case,[80] including: unreasonable delay by the debtor that is prejudicial to creditors;[81] and denial of confirmation of a plan under section 1325 of this title.[82] Though not explicitly mentioned under § 1307(c), lack of good faith also constitutes grounds for dismissal.[83] The good faith requirement is the "policing mechanism" that ensures those who invoke the reorganization processes of Chapter 13 do so only to accomplish the objectives of bankruptcy policy.[84]

To determine good faith, the Court examines the totality of the circumstances on a case-by-case basis.[85] There are no set requirements to determining good faith, but courts generally have looked at the adequacies of schedules or plans, the fairness of proposed payments to creditors, and the debtor's motivations in seeking relief.[86] The Ninth Circuit, in *In re Leavitt*,[87] articulated a set of factors to inform a finding of bad faith in a Chapter 13 case:

> (1) whether the debtor misrepresented facts in her petition or plan, *unfairly manipulated the Bankruptcy Code*, or otherwise filed the Chapter 13 petition or plan in an inequitable manner; (2) the debtor's *history of filings and dismissals*; (3) whether the debtor only *intended to defeat state court litigation*; and (4) whether other *egregious behavior* is present.[88]

---

[80] *Id.* § 1307(c)(1)-(11).

[81] *Id.* § 1307(c)(1)

[82] *Id.* § 1307(c)(5) ("denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan").

[83] *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir.1999); *In re Kestell*, 99 F.3d 146, 148 (4th Cir. 1996); *see Toles v. Powers*, No. 3:99–CV–1517–G, 1999 WL 1261453, at *3 (N.D. Tex. Dec. 28, 1999) ("Several courts have found that a lack of good faith is sufficient cause for a bankruptcy court to take action under section 1307.").

[84] *Jordan*, 598 B.R. at 406 ("Good faith is the policing mechanism to assure that those who invoke the reorganization provisions of Chapter 13 do so only to accomplish the aims and objectives of bankruptcy philosophy and policy.").

[85] *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986).

[86] *See generally In re Russell*, 348 B.R. 441, 448 (Bankr. S.D. Tex. 2006) ("Several factors may guide the court's inquiry into good faith. These include whether there are any deficiencies or inaccuracies in debtor's schedules or plan that might amount to an attempt to mislead the court; whether payments proposed by the plan are fundamentally fair in dealing with creditors, including consideration of timing of filing, amount and proportion of debt that would not be dischargeable in a liquidation, equities of any classification; whether debtor had any improper motivation in seeking relief."); *In re Ramji*, 166 B.R. 288, 290–91 (Bankr. S.D. Tex.1993) (finding bad baith in a filing of a Chapter 13 case based off various reasons, including debtor's ability to pay all creditors, debtor's motives in filing for bankruptcy, and debtor's failure to amend schedules).

[87] 171 F.3d at 1224.

[88] *Id.* (emphasis added).

These factors only serve to inform the inquiry; they are merely considerations for the Court in looking at the totality of the circumstances.[89] A bankruptcy court does not need to find that each factor is met or even weigh each of them equally; they simply guide the Court's inquiry.[90]

Additionally, the Court does not need to find any fraudulent intent by the Debtor in her Chapter 13 filing.[91] The Debtor did not have to intend to defraud creditors or show any affirmative attempt to violate the law (or Bankruptcy Code).[92] Nevertheless, the Court is permitted to examine the Debtor's conduct in previous cases in making its determination whether the instant case was filed in good faith.[93] "[A] Debtor's prepetition conduct, including [her] conduct in prior cases, is a valid consideration in determining a debtor's good faith in filing a subsequent case and confirmation of a proposed plan."[94]

If cause exists to dismiss a Chapter 13 case, bankruptcy courts have discretion to bar refiling via a dismissal with prejudice.[95] Section 349(a) provides that, when "cause" exists, bankruptcy courts may dismiss with prejudice and bar the fling of subsequent bankruptcies.[96] Although § 109(g) sets a time period of 180 days for dismissal of an individual, the discretion under § 349(a) is not limited by the 180-day period.[97] In fact, the majority of courts have found that either § 105(a) or § 349(a) provide bankruptcy courts the powers to sanction bad faith filers by disallowing further bankruptcy filings beyond that of the 180 days listed under § 109(g).[98] Thus,

---

[89] *See, e.g.*, *In re Lehr*, 479 B.R. 90, 98 (Bankr. N.D. Cal. 2012) ("[T]he court is not obligated to count the four *Leavitt* factors as though they present some sort of a box-score[.]").

[90] *See Jordan,* 598 BR at 406.

[91] *Leavitt*, 171 F.3d at 1224.

[92] *See generally In re Powers*, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991) (relying on *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986)).

[93] *In re Boyd*, Case No. 19-20846, 2020 WL 6938828, at *6 (Bankr. W.D. La 2020).

[94] *Jordan*, 598 B.R. at 406–07.

[95] *In re Casse*, 198 F.3d 327, 335 (2d Cir. 1999); *Jordan*, 598 B.R. at 408.

[96] *See* 11 U.S.C. § 349(a).

[97] *See Jordan*, 598 B.R. at 408.

[98] *See id.* at 408–09 ("Although the Fifth Circuit has yet to rule on the bankruptcy court's power to prohibit debtors from refiling for a period exceeding the 180-days proscribed in § 109(g), the majority of courts— including the Second Circuit, Fourth Circuit, Sixth Circuit Bankruptcy Appellate Panel, and Eighth Circuit Bankruptcy Appellate

when a bankruptcy court establishes cause for dismissal, it can further sanction the debtor by dismissing the debtor from refiling for a longer period of time.[99] The length of time for which the debtor is barred from refiling is committed to the discretion of the bankruptcy court.[100]

## IV. <u>Analysis</u>

The fundamental, overarching goal of the Bankruptcy Code is to provide debtors with a "fresh start"—a second chance free of the pressures that come from preexisting debt.[101] However, Chapter 13 is by no means a blank check. Chapter 13 is incredibly complex and charged with both benefits and burdens. The Code does not afford benefits to a debtor who misuses its provisions by not filing in good faith.[102]

### A. Dismissal For Cause

The Court must first determine whether cause exists under § 1307(c) to dismiss the Debtor's Chapter 13 case. Because of the *overwhelming* evidence of Ms. Parson's misuse of the Bankruptcy Code, the Court finds such cause exists.

The Debtor has displayed conduct both in this case and her previous two cases that confirms her lack of honest, earnest intent in proceeding successfully in Chapter 13. Rather, her conduct paints a vivid picture of a debtor who has learned how to game the system to avoid paying off creditors and maintain ***two homes***, while only paying for one. In this case, the Debtor has filed deficient schedules, ignored the Trustee's pleas for critical documents, including tax returns, and

---

Panel— considering this issue have ruled that the bankruptcy court has the power and authority to prohibit serial filers from filing petitions beyond the scope of the 180-day period by virtue of sections 349(a) and 105(a).").

[99] *See, e.g.*, *In re Tomlin*, 105 F.3d 933, 938 (4th Cir. 1997).

[100] *Casse*, 198 F.2d at 335 (citations omitted); *Jordan*, 598 B.R. at 408.

[101] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018).

[102] *See In re Beauty*, 42 B.R. 655, 656–57 (Bankr. E.D. La. 1984); *see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372–74 (2007) ("In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect.") (citations omitted) (internal quotations omitted).

refused to cooperate with this Court, the Trustee, and her creditors during hearings. The Debtor has also filed a Plan that was patently unconfirmable on its face, failing to comply with numerous provisions of the Bankruptcy Code, any one of which alone supported denial of confirmation.[103] The Debtor has also ignored the Court's urging to retain counsel and has not herself amended the Plan to earnestly seek confirmation.

The Court is cognizant and sympathetic to the fact that the Debtor is *pro se* and therefore should be afforded judicial grace and patience.[104] The Court is further mindful that a typical *pro se* debtor is afforded time to learn the rigors of bankruptcy to familiarize herself with the Chapter 13 process. Yet, Ms. Parson is far from the typical *pro se* debtor. Rather, the Debtor's actions (or inaction) must be viewed in the lens of her four years spent in other bankruptcy cases. For example, in her previous cases, unlike here, with the assistance of counsel, the Debtor was able to confirm a Chapter 13 plan of reorganization. Thus, she is fully aware of what a confirmable plan entails. Yet here, the Debtor has not made a serious attempt to do so. Instead, she proposed a Plan that did not account for the equity in her non-exempt second home and failed to treat certain debts as secured, even though she knew from her previous cases how these debts should be handled.[105] Thus, Ms. Parson has sought to manipulate the Bankruptcy Code in a manner plainly inequitable to her creditors.

She has also exhibited egregious behavior in her cases. Previously, the Debtor sought to recuse her two prior bankruptcy judges for outlandish reasons for which there was no evidence.

---

[103] The Court found that the Debtor failed to comply with various provisions of the Bankruptcy Code, including sections 1322; 1325(a)(3) (good faith); 1325(a)(4) (best interests of creditors); 1325(a)(7) (good faith); and 1325(a)(9) (failure to supply tax returns).

[104] *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976) ("The handwritten pro se document is to be liberally construed."); *Cao v. BSI Financial Services*, Civil Action H-17-321, 2021 WL 76327, at *1, 3 (S.D. Tex. Jan. 8, 2021) (explaining that the court had given give a *pro se* litigant "significant leeway").

[105] *See, e.g.*, Order Confirming Chapter 13 Plan, Case No. Case No. 15-30080-BJH, Dkt. No. 33 (Bankr. N.D. Tex. 2015); Amended Order Confirming Chapter 13 Plan, Case No. 18-41511-BTR, Dkt. No. 42 (Bankr. E.D. Tex. 2018).

Here, the Debtor requested recusal as well, and she again presented no evidence in support thereof. Instead, the Debtor made bizarre, offensive claims that largely look "cut and pasted" from her previous bankruptcy cases.[106] And again, as in previous cases, the Debtor has frivolously appealed the Court's orders (including interlocutory orders) and requested to proceed *in forma pauperis*, despite having the funds to pay for her appeals.[107] The Debtor's actions throughout this case can be seen as nothing else than a strategy to prolong her ownership of two homes she likely cannot afford and put off any payment to creditors. This fact is made even more plain given that Ms. Parson's petition was filed on the heels of the state court's decision refusing the stay of execution on her property.[108]

The Court finds the Debtor's actions comparable to that of the debtor in *In re Jordan*, a similar case out of the Bankruptcy Court for the Eastern District of Louisiana where the court found that the debtor had filed in bad faith and dismissed the bankruptcy with prejudice.[109] In *Jordan*, the debtor had a long history of previous bankruptcy filings, like Ms. Parson.[110] The debtor in *Jordan* filed deficient schedules and failed to rectify missing documentation when requested.[111]

---

[106] For example, Ms. Parson has accused every single bankruptcy judge of racial prejudice. *See, e.g.*, Dkt. No. 58 at 13 (Debtor's Notice of Appeal claiming she was subjected to "racial discrimination" from this Court's procedures regarding notice and exhibits); Memorandum Opinion and Order Denying Debtor's Motion to Recuse at 4, Case No. 18-41511-BTR, Dkt. No. 223 (Bankr. E.D. Tex. 2019) ("The Debtor's complaint that this Court is biased because counsel for one of the mortgage holders 'is an American Asian, like the Judge' is premised on the Debtor's unhappiness with the Court's rulings on the merits."); Debtor's Motion for Recusal of Judge Hale at 3, Case No. 18-41511-BTR, Dkt. No. 161 (Bankr. N.D. Tex. 2018) ("Debtor, Bridget Parson, has been subjected to malice and racial prejudice[.]").

[107] In this case, the Court found that the Debtor's request to a waiver of appellate fees was made in bad faith. Dkt. No. 92. Previous courts have made similar findings and denials of Ms. Parson's *in forma pauperis* motions. *See* Memorandum Opinion and Order Denying Application to Proceed *In Forma Pauperis*, Case No. 18-41511-BTR, Dkt. No. 175 (Bankr. E.D. Tex. 2019).

[108] Dkt. No. 47 ("It appears the Debtor filed this bankruptcy after the Court of Appeals, 5th District of Texas, denied her motion to stay execution of The Judgment on May 20, 2021."); *see also Leavitt*, 171 F.3d at 1224 (explaining that one of the factors in determining bad faith is whether "the debtor only intended to defeat state court litigation") (internal citations omitted).

[109] *See* 598 B.R. at 407–08.

[110] *See id.* at 309–404. Although three bankruptcies may not be an exceptional number of bankruptcy cases, the sheer magnitude of the amount of unnecessary litigation, frivolous pleadings, and unsuccessful appeals in her three cases is extraordinary.

[111] *Id.* at 408.

Ms. Parson has done the same, filing incomplete and often indiscernible schedules[112] and failing to provide tax records to the Trustee.[113] The *Jordan* debtor's plan was found deficient because it failed to list all debts and treatments of other class claims.[114] Similarly, Ms. Parson's now-denied Plan also fell *very* short of confirmation.[115]

The *Jordan* court, in dismissing the debtor's case for cause, explained that the debtor's previous cases informed a finding that the debtor should have known better; he should have been aware of the basic requirements of proceeding in bankruptcy.[116] Thus, the Court concluded that the debtor was intentionally misusing the Bankruptcy Code to stave off foreclosure.[117] Ms. Parson too should be aware of what is needed to be successful in bankruptcy. She has filed two previous Chapter 13 petitions and plans, which involved the same properties and same issues present here. Her deficiencies in this case mirror her deficiencies in previous cases. The Debtor has failed to rectify these deficiencies at the urging of both the Trustee and this Court.[118] Rather than address her documentary failings, the Debtor resorts to vexatious litigation tactics and frivolous arguments, which have not only been lodged in virtually every other court before this one, but have been dismissed or denied repeatedly, either on the merits or as frivolous. Like the *Jordan* court, the

---

[112] *See, e.g.*, Dkt. No. 6 (Notice of Deficiency showing eight (8) separate reasons the Debtor's Original Petition was deficient); Dkt. No. 13 (handwritten schedules by the Debtor).

[113] *See e.g.*, *In re Fonke*, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004) (debtor's omissions and failure to correct omissions supported a finding of bad faith in a conversion action).

[114] *Jordan*, 598 B.R. at 408.

[115] Dkt. No. 52.

[116] *Jordan*, 598 B.R. at 408 ("Since Debtor has previously filed a number of Chapter 13 bankruptcy cases, he should have been aware of the basic requirements of bankruptcy filing. Despite the ultimate dismissal of each case prior to confirmation, Debtor failed to rectify his deficiencies in the following case.").

[117] *Id.* ("[I]t appears Debtor willfully and intentionally chose to disregard these requirements to postpone foreclosure on the Property.").

[118] The Court has repeatedly urged the Debtor to seek counsel, most notably at hearing on confirmation. The Debtor has not done so. The Trustee has also made himself available to assist the Debtor and likewise urged her to retain counsel to proceed in Chapter 13 more effectively. She has chosen to ignore the Trustee as well.

Court finds that this behavior displays no less than an intentional attempt to misuse the Bankruptcy Code to avoid payment of her creditors.[119]

Thus, the Court finds cause exists under § 1307(c) to dismiss Ms. Parson's Chapter 13 case. Ms. Parson has filed her Chapter 13 case in bad faith and cannot be allowed to misuse the Bankruptcy Code to hinder the payment of creditors.

## B. Dismissal With Prejudice

Having found dismissal of the Debtor's bankruptcy case proper under § 1307(c), the Court next turns to the question of whether a dismissal with prejudice, specifically a dismissal with prejudice for five years, is a proper sanction for the Debtor's conduct. Because of Ms. Parson's vexatious conduct in this case and her previous cases and her lack of honest intent to reorganize her affairs, the Court finds a dismissal with prejudice is appropriate. However, the Court will only impose a **three-year** bar on the Debtor from refiling a bankruptcy case.

Ms. Parson has willfully used the Chapter 13 process to delay the payment of creditors and avoid foreclosure.[120] She has made virtually no effort to address many of her creditors' claims, specifically those of Becky Cole and SPS, which she largely ignored in her Plan.[121] She makes objections in hearings and by motion that can be seen as nothing more than frivolous.[122] Many of these objections are word-for-word recitations of previous objections both in this case and her two previous bankruptcy cases. As an example, it is practically incalculable how many times Ms. Parson has claimed this Court and others have conducted "illegal hearings," infringing upon her

---

[119] *Jordan*, 598 B.R. at 408 ("[I]t appears Debtor willfully and intentionally chose to disregard these requirements to postpone foreclosure on the Property. Debtor's egregious misuse and manipulation of the bankruptcy system more than adequately constitute 'cause' to dismiss his Chapter 13 case.").

[120] Evidence of willfulness is not necessary pursuant to § 1307. *See Jordan*, 598 B.R. at 410–11. However, there is ample evidence in the record showing that the Debtor's actions were willful.

[121] *See, e.g.*, Dkt. No. 40 (SPS's objection to confirmation of Chapter 13 Plan for failing to cure mortgage claims and comply with Conduit program).

[122] *See, e.g.*, Dkt. No. 92 (denying bad faith motion to proceed *in forma pauperis*).

"natural rights" or have acted in an "arbitrary and capricious" way.[123] Ms. Parson also appeals any and every order by this Court and others to slow down the process. Even when this Court ordered that her Motion to Proceed *In Forma Pauperis* on her first appeal had been made in bad faith,[124] Ms. Parson appealed again[125] instead of facing the realities that she was *not* indigent based off her *sworn* Schedules.[126]

Like other bankruptcy courts before this one, Ms. Parson wildly accuses the Court of a litany of biases and violations without providing *any* support for the allegations.[127] She continues to claim the Court has "subjected her" to "adverse" documents for which she has not received notice but presents no evidence to rebut the certificates of service evidencing the documents were mailed to her home address.[128] In fact, she has objected to *every* document presented to her at hearings as one she did not receive, even after admitting to the Court that she had no issue with the mail services to her home. Ms. Parson also claims to not know parties representing her creditors even when they are listed on proofs of claim,[129] and she continues to claim this Court has no jurisdiction because of state court proceedings and prior bankruptcies, even though the Court has repeatedly explained to her that is an incorrect statement of the law.[130]

---

[123] *See, e.g.*, Dkt. No. 58.

[124] Dkt. No. 92 ("Having filed such a complex Notice of Appeal to an unappealable order, the Court can see the Notice of Appeal as nothing other than another frivolous attempt to hinder creditors.").

[125] Ms. Parson subsequently sought to proceed *in forma pauperis* on her appeal of this Court's Amended Order Denying Debtor's Application to Proceed *In Forma Pauperis*. Dkt. No. 94.

[126] Dkt. No. 13 (Schedules I and J). The Debtor's Schedules of Assets and Liabilities indicate that the Debtor has monthly income of $4,755.99 and disposable income of $436.00 per month. Therefore, Ms. Parson is not indigent, and she is not entitled to waiver of the appellate fees.

[127] Ms. Parson's Motion for Recusal alluded to a laundry list of undescribed, unsubstantiated claims of harassment, intimidation, racial discrimination, violations of civil, constitutional, and natural rights and allegations of a "hostile environment." Dkt. No. 59.

[128] In fact, the Trustee gave a lengthy factual recitation of his various efforts to provide Ms. Parson with exhibits prior to the hearing, all of which were ignored or rebuffed by Ms. Parson. The Courts finds that Ms. Parson's allegations that she was not served lack credibility.

[129] Ms. Parson has repeatedly claimed she does not know Mr. James Carroll, III, even though he filed Proof of Claim No. 8-1 in this case on behalf of Becky Cole and he is listed in her Plan *by name*. Dkt. No. 15 at 5.

[130] Dkt. No. 89 ("The 'abatement' of state court appellate orders does not bear on this Court's jurisdiction. Rather, the stay of such orders is in deference to *this Court* and the imposition of the automatic stay imposed by 11 U.S.C. § 362.").

Ms. Parson's actions in this Court and in previous bankruptcies make a mockery of the bankruptcy process.[131] Her actions show nothing more than a debtor attempting to use the powers of the Bankruptcy Code, specifically the automatic stay, to avoid her liabilities. Because of Ms. Parson's actions and behavior before this Court, the Court finds it exceedingly appropriate to dismiss her case with prejudice.

As previously discussed, it is up to the discretion of the Court to determine how long the Debtor should be barred from refiling.[132] The Trustee's Motion to Dismiss asserts that a five-year bar from refiling is proper in light of the increased burdens of cost and time the Debtor has imposed on both the Court and third parties.[133] The Trustee contends that this "practice of abuse" will continue unless such a bar is imposed.[134] At the hearing on the Motion to Dismiss, the Trustee also asserted that the five-year bar was specifically necessary because of Ms. Parson's abuse of the appellate system, insisting that Ms. Parson would continue her attempts to put off foreclosure as long as possible. The Trustee emphasized that Ms. Parson might have complaints with her lenders' claims, but that the state or federal trial courts, not the bankruptcy court, were the proper place to resolve these issues as she simply did not have the income to pay the arrearages shown by the proof of claims and therefore could not put forth a confirmable plan. The Court agrees with the Trustee. The bankruptcy court is not the proper forum for this debtor to address her current grievances.

The Court also agrees with the Trustee that the length of the bar should reflect the historical realities of Ms. Parson's behavior.[135] However, the Court will not impose a bar of five years.

---

[131] The evidence submitted by the Trustee was voluminous, describing in documentary detail Ms. Parson's vexatious, frivolous litigation in prior cases.

[132] *Casse*, 198 F.2d at 335 (citations omitted); *Jordan*, 598 B.R. at 408.

[133] Dkt. No. 47.

[134] *Id.*

[135] *See, e.g.*, *In re Freeman*, 224 B.R. 376 (Bankr. S.D. Ohio 1998) (imposing permanent bar where *pro se* debtors in Chapter 7 were not deterred from their abusive filings despite repeated bars to refiling).

Although Ms. Parson has surely abused the bankruptcy process—filing repeated, frivolous motions and appeals—the Court believes a five-year bar is an extreme remedy for a *pro se* debtor.

Instead, the Court finds that a **three-year** bar to refiling is the proper measure. Three years will allow sufficient time for Ms. Parson and her lenders and creditors to come to a resolution, even if Ms. Parson chooses to continue to appeal and stay foreclosure(s) as she has done in the past.

## V.    CONCLUSION

The purpose of the Bankruptcy Code is to afford a fresh start to the *honest* but unfortunate debtor.[136] Ms. Parson is simply not that debtor. Rather, Ms. Parson has weaponized the Bankruptcy Code and appellate process to prolong payment to her creditors and avoid foreclosure. Ms. Parson is the definition of a debtor who has not filed her bankruptcy case in good faith. She has no legitimate intent to treat her creditors equitably. Her actions are an affront to the spirit of the Bankruptcy Code, and she does not belong in *this* Court. If she chooses to fight her lenders in state court then she can do so, but she cannot abuse the powers of the Bankruptcy Code in her efforts.

Accordingly, the Court finds that Ms. Parson's Chapter 13 case has not been filed in good faith and shall be **dismissed with prejudice**. Given Ms. Parson's continued misuse of the bankruptcy system, the Court finds a **three-year** bar to filing a bankruptcy petition constitutes a fair and appropriate sanction under the circumstances. If the Debtor seeks to file another bankruptcy petition within the next three years, the Debtor must first come to this Court to seek permission to file the same. Otherwise, the petition shall be dismissed, and the Court will consider additional sanctions.

Based upon the foregoing and the record before the Court, it is hereby

---

[136] *See Grogan v. Garner*, 498 U.S. 279, 286–87 (1991) (emphasis added).

**ORDERED** that the Motion to Dismiss with prejudice is **GRANTED**; it is further

**ORDERED** that the Debtor is prohibited from filing another bankruptcy petition under any chapter of the Bankruptcy Code, with any bankruptcy court, for a period of three years, through and including September 30, 2024 (the "**Bar Period**"), unless she obtains prior relief from the Order from this Court; it is further

**ORDERED** that should the Debtor file a bankruptcy petition during the Bar Period without obtaining prior relief from this Order from this Court, that such case shall be dismissed, and the Debtor shall be subject to further sanctions; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order via first class mail on the Debtor at 508 Grady Lane, Cedar Hill TX, 75104.

**###END OF MEMORANDUM OPINION AND ORDER###**